# UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**Juan Manuel Ducler,**

Plaintiff, pro se,

v.

**Republic of Argentina; Burford Capital Ltd.; Petersen Energía S.A.; Petersen Energía Inversora S.A.U.; Petersen Group (Eskenazi family); International Health Services Argentina S.A. (Emergencias Médicas); Credit Suisse AG (New York & Zurich branches); The Bank of New York Mellon; BNP Paribas (New York); Citibank N.A. (New York); Goldman Sachs International Bank; Standard Bank PLC; Itaú Bank (Europe); Cleary Gottlieb Steen & Hamilton LLP; and individual officials, bankers, lawyers, and operatives listed herein,**

Defendants.

Case No.

**CIVIL COMPLAINT**

## I.      INTRODUCTION

Plaintiff Juan Manuel Ducler, son of Aldo Luis Ducler (assassinated on June 1, 2017), brings this action *pro se* as a whistleblower and direct victim under Argentine Law 27.319, U.S. securities laws, and applicable international human rights frameworks.

This Complaint arises from an international racketeering enterprise involving:

- o   The fraudulent leveraged acquisition of a 25% stake in YPF S.A. between 2008 and 2011, financed almost entirely through debt facilities structured under New York law with Credit Suisse AG (New York), BNP Paribas (New York), BNY Mellon (New York), and Citibank N.A. (New York) as collateral agents and clearing banks.

o The misappropriation of over $ 1 billion in Santa Cruz provincial funds, diverted into offshore structures controlled by the Eskenazi family as frontmen for Néstor Kirchner (president of Argentina) and his network.

o The fraudulent continuation of claims by Burford Capital in the Southern District of New York (SDNY), seeking $ 16 billion based on interests that were fraud-tainted and never represented a bona fide investment.

o The assassination of Aldo Luis Ducler in 2017, within 48 hours of his whistleblower disclosure, and the ongoing retaliation against Plaintiff, who was publicly exposed, criminally harassed, and deprived of family rights in reprisal for continuing his father's disclosures.

This action seeks relief under RICO, FCPA, FSIA exceptions, Dodd-Frank whistleblower protections, wrongful death, and fraud on the Court, to obtain justice for the assassination of a whistleblower, to protect Plaintiff as successor and victim, and to declare null and void the fraudulent litigation advanced by Petersen Energia (Burford Capital) in SOUTHERN DISTRICT OF NEW YORK (SDNY).

## II.    JURISDICTION AND VENUE

### 1. Subject Matter Jurisdicion

This Court has subject matter jurisdiction over this action pursuant to:

o **Civil RICO (18 U.S.C. § 1961 et seq.)**, as Defendants engaged in a racketeering enterprise involving fraud, money laundering, bribery, obstruction of justice, and the assassination of Aldo Ducler, with substantial acts and financial transfers routed through New York.

o The **Foreign Corrupt Practices Act (15 U.S.C. § 78dd)**, as Defendants used U.S. financial institutions—including Credit Suisse AG (New York), BNP Paribas (New York), BNY Mellon (New York), and Citibank N.A. (New York) —to facilitate bribery of Argentine officials and to conceal illicit transactions.

o The **Foreign Sovereign Immunities Act (28 U.S.C. §§ 1605(a)(2), (a)(5))**, as Argentina engaged in commercial activities through New York banks and contracts expressly governed by New York law (Credit Agreements, Pledge

and Security Agreements) and committed a tort in violation of international law (the extrajudicial killing of Aldo Ducler).

- o The **Dodd-Frank Act Whistleblower Protections (15 U.S.C. § 78u-6(h))**, as Plaintiff and his father made protected disclosures regarding securities fraud involving NYSE-listed YPF and Burford Capital, and Plaintiff was subjected to retaliation, persecution, and denial of protection.

**2. Venue**

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and transactions giving rise to these claims occurred in the Southern District of New York, including:

- o The 2008 and 2011 Credit Agreements, requiring collateral and clearing accounts through Citibank N.A. (New York) and The Bank of New York Mellon.
- o The subsequent fraudulent lawsuit filed by Burford Capital in this District (*Petersen Energía Inversora S.A.U. v. Argentine Republic*, No. 15-cv-02739), arising from the same tainted shares.

**3. Discovery Authority**

This Court has authority to order discovery under 28 U.S.C. § 1782 from Burford Capital, Petersen entities, financial institutions (including Citibank, Credit Suisse, BNP Paribas, BNY Mellon), and Argentine officials complicit in the fraudulent scheme, as such discovery is essential to establish the full scope of the fraud and racketeering enterprise.

## III.   PARTIES

**A. Plaintiff:** Juan Manuel Ducler, Plaintiff, son of Aldo Luis Ducler (assassinated June 1, 2017). Whistleblower under Argentine Law 27.319 and U.S. securities laws. Victim of retaliation, harassment, and persecution after continuing his father's disclosures on the YPF/Santa Cruz fraud.

**B. Institutional Defendants**

  **i.   State Defendants**

1. **Republic of Argentina** – Sovereign state, liable under FSIA commercial and tort exceptions. Engaged in fraudulent financing of YPF acquisition through New York banks (Credit Agreements 2008, 2011; pledges under NYUCC) Responsible for fraud involving the Santa Cruz provincial funds, the fraudulent acquisition of 25% of YPF, the assassination of Aldo Ducler, and subsequent judicial cover-u,p. as well as persecution of Plaintiff.

   ii.    **Financial Defendants**

2. **Burford Capital Ltd. (London/New York)** – Litigation funder. Acquired Petersen claim in 2015 despite fraud-tainted origin, benefited from the silencing of whistleblower Aldo Ducler, and pursued a $16 billion claim in SDNY.

3. **Credit Suisse AG (New York & Zurich)** – Structured and syndicated over $ 700M in loans to Petersen. Custodian of Santa Cruz funds. Acted through multiple branches, including collateral accounts in Zurich and syndicate clearing in New York.

   o **Santa Cruz Provincial Funds – Bank Accounts**

      o Account No. 0835-860194-3  – Santa Cruz Funds.
      o Account No. 860194-32-1 – Santa Cruz Funds.
      o Account No. 860194-32-2 – Santa Cruz Funds.
      o Account No. 0835-976129-4 – Santa Cruz Funds.
      o Account No. 1460-0001-15000036561 – Santa Cruz Funds.
      o Account No. 504773-54 – Santa Cruz Funds.

   o **Credit Suisse-Linked Financial Vehicles**

      o Chervil Capital Invest LTD (Credit Suisse Zurich) – Account No. 0842-532526-22-4.
      o G&FS Capital Invest LTD (Credit Suisse Zurich) – Account No. 0842-532526-22-4.

   o **Petersen Group Subsidiaries**

      o Petersen Energía PTY LTD – Account No. 0835-1818248-22.
      o Petersen Inversiones Spain S.A. – Account No. 0835-1284896-92.

4

4. **The Bank of New York Mellon (New York)** – Collateral Agent for the 2008 and 2011 Petersen loans, enabling fraudulent financing tied to YPF shares.

5. **BNP Paribas (New York)** – Financed Petersen's acquisition of YPF shares; enabling fraudulent financing tied to YPF shares. Participant in 2008 and 2011 syndicated loans financing Petersen's acquisition of YPF.

6. **Citibank N.A. (New York)** – Provided accounts and financing for Petersen entities; facilitated illicit transfers of funds tied to the Santa Cruz accounts and enabling fraudulent financing tied to YPF shares.

   o Sebastián Eskenazi – Account No. 9933891571.

   o Enrique Eskenazi – Account No. 9933891555.

   o Ezequiel Eskenazi – Account No. 9936627303.

   o Matías Eskenazi Storey – Account No. 9933891539.

   o Mantenimientos y Servicios S.A. – Account No. 36879678.

   o Petersen Inversiones S.A. – Account No. 36879977.

   o Petersen Thiele y Cruz S.A. – Account No. 36879766.

**Role of U.S. Banks in the Fraud**

The Eskenazi family, acting as frontmen (*testaferros*) for former Presidents Néstor and Cristina Kirchner since at least 1998 and increasingly after 2003, maintained multiple accounts at Citibank N.A., New York and related institutions. These accounts were used to launder illicit funds originating from the misappropriated Santa Cruz provincial reserves and other Argentine state assets.

In addition, U.S. and international banks operating through their New York branches—including Citibank, Credit Suisse AG (NY Branch), BNP Paribas (NY), and The Bank of New York Mellon—structured multi-billion-dollar syndicated loans in 2008 and 2011 that enabled Petersen Group to acquire 25% of YPF with only ≈$ 25 million in equity against a $ 3.6 billion transaction.

By knowingly or recklessly disregarding anti-money laundering red flags, failing to apply compliance procedures, and facilitating back-to-back financing schemes, these institutions directly participated in and benefited from the fraudulent acquisition of YPF, causing damages to U.S. investors and to the Plaintiff as a whistleblower.

###  iii.    Corporate Defendants (Private Entities Supporting Fraud or Cover-Up)

7. **Petersen Energía S.A., Petersen Energía Inversora S.A.U., Petersen Group (Eskenazi family entities)** – Fraudulently acquired 25% of YPF using Santa Cruz public funds, contributed only $25 million of own capital in a $3.6 billion scheme, and orchestrated financial maneuvers through U.S. and European banks.

8. **Cleary Gottlieb Steen & Hamilton LLP** – Designed corporate structure for Petersen entities (Buenos Aires/New York offices). Later, De la Cruz's lawyer (a former Cleary partner) defended Argentina in the Burford litigation, creating a serious conflict of interest.

9. **International Health Services Argentina S.A. (Emergencias Médicas)** – Private ambulance company (units 106 and 116) whose irregular intervention and 44-minute delay in transporting Aldo Ducler facilitated his assassination and subsequent cover-up.

### C. Individual Defendants – Government Officials

10. **Mauricio Macri – President of Argentina (2015–2019)**. Enabled Burford Capital's positioning in the YPF litigation, blocked investigations into Santa Cruz funds, and ignored Ducler's whistleblower complaints.

11. **Fabián "Pepín" Rodríguez Simón** – Senior Advisor to President Macri. Coordinated political and legal strategies with Burford Capital, ignored Ducler's whistleblower complaints, and facilitated obstruction.

12. **Mariano Federici** – Head of Argentina's Financial Intelligence Unit (UIF, 2017). Exposed Plaintiff's whistleblower filing publicly within three days, violating confidentiality and blocking the complaint, thereby facilitating retaliation.

13. **Marcelo D'Alessandro** – Secretary of Security, Government of the City of Buenos Aires (GCBA, 2017). Sent WhatsApp messages to Prosecutor Peres during the Ducler homicide investigation, interfering with judicial independence.

14. **Judge Ariel Lijo** – Federal Judge of Argentina. Actively colluded with Grupo Petersen and the Eskenazi family. On December 21, 2017, he summoned Plaintiff to the Federal Courthouse, together with Plaintiff's then attorney Kalbermatten, and stated that he was a "friend of Sebastián Eskenazi" and that Plaintiff should accept Petersen's agreement.

One week later, Plaintiff was brought to the offices of Grupo Petersen, where a fabricated extortion operation was staged using hidden cameras, bribed police officers, and an edited recording. The true purpose of this operation was not to negotiate an agreement, but to block Plaintiff from acting as a whistleblower, discredit him publicly, and subject him to judicial harassment by fabricating four criminal cases against him.

Judge Lijo's conduct demonstrates:

Direct collusion with the Eskenazi family and Grupo Petersen;

- o Judicial corruption and obstruction of justice;
- o Active participation in the persecution of a protected whistleblower, through the fabrication of criminal prosecutions;
- o Violation of Plaintiff's fundamental rights, by abusing judicial authority to intimidate and silence him, and to divert his efforts into defending against false criminal charges.

15. **Judge Rappa** – Closed Aldo Ducler homicide case No. 33.168/2017 without conducting basic investigative measures, facilitating the cover-up.

16. **Prosecutor Peres** – Prosecutor in charge of the Ducler homicide case. Coordinated cover-up with GCBA officials and failed to investigate intelligence involvement.

17. **Prosecutor Lapadú –** Engaged in systematic judicial harassment against Plaintiff through fabricated prosecutions.

18. **Prosecutor Cardinale** – Participated in false prosecutions against Plaintiff, contributing to harassment and obstruction of justice.

19. **Andrés de la Cruz** – Former partner at Cleary Gottlieb (Buenos Aires & New York), architect of the Petersen corporate structure. Later appointed Sub-Procurador del Tesoro of Argentina (2023–2025), defending Argentina in the same Burford litigation he previously structured—creating a severe conflict of interest.

**D. Individual Defendants – Intelligence Officials**

20. **Francisco "Paco" Larcher** – Former Deputy Director of the Argentine Intelligence Agency (AFI, 2003–2014), previously employed by the Eskenazi family. Alleged to have played a coordinating role in protecting the Petersen Group's fraudulent YPF scheme and in facilitating the cover-up of Aldo Ducler's assassination.

21. **Antonio "Jaime" Stiuso –** Former senior AFI operative, long-time intelligence handler. Accused of direct involvement in operations of intimidation, surveillance, and obstruction of justice connected to the Ducler case.

22. **Silvia Majdalani** – Deputy Director of AFI (2015–2019), close ally of Larcher. Implicated in the institutional cover-up of Aldo Ducler's assassination and in obstructing whistleblower protections for Juan Manuel Ducler.

**E. Individual Defendants – Financial Actors / Bankers**

23. **Pedro Chomnalez** – Former Head of Credit Suisse Latin America Investment Banking (2004–2010). Personal banker to the Eskenazi family and linked to the Santa Cruz funds while at Credit Suisse. Left the bank in 2013, coinciding with the disappearance of Santa Cruz funds. Currently head of CH Global Capital LLC (New York, 445 Park Avenue, Suite 15E).

24. **Erika Walber** – Vice President, The Bank of New York Mellon (USA). Involved in Petersen loan syndicates as Collateral Agent.

25. **Joan Talbot –** Managing Director, BNP Paribas (USA). Responsible for U.S. operations linked to Petersen financing and fraudulent YPF acquisition.

26. **Michael Lienhardt –** Credit Suisse AG, Zurich. Involved in transactions linked to Santa Cruz funds and Petersen financing.

27. **Louis J. Impellineri –** Credit Suisse AG, New York Branch. Senior executive responsible for financial arrangements tied to Petersen's YPF acquisition.

28. **John Doe Citibank Officers (1–5)** - Unknown executives, relationship managers, and compliance officers of Citibank N.A. (New York) who opened and supervised accounts used by the Eskenazi family and Petersen Group, including accounts in the names of Sebastián, Enrique, Ezequiel, and Matías Eskenazi, as well as corporate entities (Mantenimientos y Servicios S.A., Petersen Inversiones S.A., and Petersen Thiele y Cruz S.A.). These Citibank officers knowingly or recklessly

disregarded anti–money laundering red flags, facilitated illicit transfers of Santa Cruz provincial funds, and authorized collateral and clearing accounts used in the fraudulent Petersen acquisition of YPF shares. Plaintiff reserves the right to amend this Complaint to identify these officers by name once their identities are revealed through discovery.

**F. Individual Defendants – Eskenazi Family & Associates**

29. **Sebastián Eskenazi** – Principal, Petersen Group. Former Executive Vice President and CEO of YPF S.A. Former Director of Petersen Energía S.A., Petersen Energía PTY LTD, Petersen Inversiones Spain S.A., Petersen Energía Inversora S.A., and Petersen Energía Inversora Holding GmbH. Traveled to Zurich, Switzerland, with his former spouse Marcela Brugo and former Menemera minister Jassán to open the Credit Suisse account for Santa Cruz funds. Alleged nominee ("testaferro") for the Kirchner family since 1998.

30. **Matías Eskenazi** – Co-principal, Petersen Group. Former board member of Petersen Energía S.A. and Petersen Energía PTY LTD. Former Director and Deputy to the CEO of YPF S.A. CEO of Administradora San Juan SRL and co-CEO of Petersen Energía S.A. (Spain). Held senior roles across numerous Petersen-controlled companies, including Banco de Santa Cruz S.A., Estacionamientos Buenos Aires S.A., Comercial Latino S.A., Red Link S.A., and Nuevo Banco de Santa Fe S.A.

31. **Ezequiel Eskenazi Storey** – Former board member of Petersen Inversiones S.A. and alternate Director of YPF S.A. Vice President of Agro Franca S.A. Board member of Petersen, Thiele & Cruz S.A. and Santa Sylvia S.A.

32. **Claudio Cánepa** – Former Compliance Officer of Banco de Santa Cruz before UIF, former Director of Petersen Energía PTY LTD. Currently Vice President of Banco de Santa Cruz S.A. Signed filings before the U.S. SEC regarding Petersen Energía's acquisition of YPF, raising questions about his dual role in the bank and Petersen entities.

33. **Ignacio Cruz Morán –** Former Director General of Operations of YPF S.A. during Eskenazi's management. Former Director of Petersen Energía S.A., Petersen Inversiones Spain S.A., Petersen Energía Inversora S.A.U., and Petersen Energía Inversora Holding GmbH.

34. **Eduardo Ángel Garrote** – In 2008 represented Mantenimientos y Servicios S.A., Petersen Inversiones S.A., and Petersen Thiele y Cruz S.A. Former alternate Director of YPF S.A. Transferred approximately $25 million from Citibank NY accounts to Petersen Energía PTY LTD at Credit Suisse, directly funding the YPF acquisition.

35. **Roque Izzo** – Former Director of Petersen Energía PTY LTD. Must explain his role in Petersen's acquisition of YPF shares.

36. **Pablo Cristian Bonetto** – Former Director of Petersen Energía Inversora Holding GmbH.

### G. Individual Defendants – Legal Advisors

37. **Mauro Renato José Dacomo** – Legal counsel to the Eskenazi family. Former Attorney-in-Fact and Director of Petersen Energía S.A., Petersen Energía PTY LTD, Petersen Inversiones Spain S.A., Petersen Energía Inversora S.A.U., and Petersen Energía Inversora Holding GmbH. Also served as Alternate Director and former Corporate Director of Legal Affairs at YPF S.A., where he facilitated legal structuring of Petersen's fraudulent YPF acquisition.

38. **Leonardo López** – Attorney and legal counsel to the Eskenazi family. Former Director of Petersen Energía Inversora Holding GmbH. Participated in corporate governance and legal operations underpinning the Petersen Group's fraudulent stake in YPF.

### H. Individual Defendants – Operatives and Facilitators

39. **Diego Lagomarsino** – Civilian operative with documented ties to Argentine intelligence networks (AFI/ex-SIDE). Formerly employed by OGK Abogados, where he played a key role in fabricating legal accusations against Juan Manuel Ducler to discredit him as a whistleblower. Allegedly involved in providing logistical support for the assassination of Aldo Ducler and in subsequent obstruction efforts, in coordination with intelligence handlers and private contractors. Currently indicted in Argentina as a necessary participant in the assassination of prosecutor Alberto Nisman (2015), underscoring his role in politically motivated killings and cover-ups.

### I.  Individual Defendants – Family Members Facilitating Persecution

40. **Regina Oneto Gaona** – Civilian operative and relative of the Plaintiff, allegedly tied to Argentine intelligence structures under the control of political operator Daniel Angelici. Directly involved in fabricating false criminal accusations against Juan Manuel Ducler, acting under pressure or inducement from intelligence handlers. Her actions contributed to the silencing of the Plaintiff as a whistleblower.

41. **Óscar Oneto Gaona** – Relative of the Plaintiff. Acted in complicity with Regina Oneto Gaona to intimidate and silence Juan Manuel Ducler, supporting the broader operation to suppress whistleblower testimony regarding the Santa Cruz funds, YPF fraud, and the assassination of Aldo Ducler.

### J.  Additional Participants in Santa Cruz Funds Operation

42. **Héctor Scasserra** – Former business partner of Aldo Ducler, directly linked to the mismanagement of the Santa Cruz funds. Reportedly the last individual to meet with Aldo Ducler prior to his assassination, raising suspicions of complicity in surveillance and coordination.

43. **Miguel Iribarne** – Former business partner of Aldo Ducler, directly linked to the mismanagement of the Santa Cruz funds

44. **Eduardo Cafaro** – Former Director of the Central Bank of Argentina (2003–2007). Trusted confidant of former President Néstor Kirchner and implicated in the handling and cover-up of Santa Cruz funds.

45. **Alfredo McLaughlin** – Former executive at Deutsche Bank, former Secretary of Finance of Argentina, and former Argentine representative to the IMF. Directly linked to the management of Santa Cruz funds in Switzerland, operating the UBS Geneva account opened in late 2002 to channel public funds abroad.

46. **Eduardo Labolida** – Former government-appointed Interventor of Banco de Santa Cruz during the privatization process later won by the Eskenazi family. Implicated in the irregular administration and transfer of Santa Cruz funds through Banco de Santa Cruz.

## IV.    FACTUAL BACKGROUND

1. **Santa Cruz Funds and Fraudulent Diversion**

Beginning in 1998, the Province of Santa Cruz received more than $ 1 billion from the Argentine federal government as part of revenue-sharing and privatization proceeds. Rather than being safeguarded, these funds were diverted into secret offshore structures controlled by the Eskenazi family, acting as frontmen ("testaferros") for former President Néstor Kirchner and his family.

2. **Role of the Eskenazi Family**

Sebastián Eskenazi and his brothers Matías and Ezequiel, through Petersen Energía S.A., Petersen Energía Inversora S.A.U., and affiliated entities, fraudulently acquired 25% of YPF S.A. between 2008 and 2011. Despite presenting themselves as private investors, the Eskenazis provided only approximately $ 25 million in equity (0.7%) for a $ 3.6 billion transaction. The remainder was financed almost entirely by debt:

- o A $ 1.026 billion Credit Agreement (February 21, 2008) with Credit Suisse (London Branch), Goldman Sachs, BNP Paribas, and Banco Itaú, secured by YPF dividends.
- o A $ 700 million Credit Agreement (May 3, 2011) with Credit Suisse, BNP Paribas, Citibank N.A. (New York), Standard Bank, Itaú, and The Bank of New York Mellon (New York, as Collateral Agent)., secured by YPF dividends.
- o A Direct Agreement with Repsol and the banks.
- o A Registration Rights Agreement granting the right to liquidate YPF ADSs on the NYSE.
- o A parallel $ 71.5 million loan with Chervil Capital (2008, Zurich),and $ 57.2 million loan with G & FS Capital Invest Ltd. (2010, Zurich), secured by Santa Cruz funds at Credit Suisse.
- o In total, over 51% of the $ 3.6 billion transaction was financed with debt backed by YPF's own future dividends and Santa Cruz funds.

- o Repsol, the seller itself, financed the Eskenazi's in $1.619 billion as a vendor loan (44%). Could this be due to the more than $5 billion it withdrew in dividends between 2008 and 2011? The rest was advance dividends.

- o The acquisition of 25% of YPF by the Petersen Group was entirely leveraged and fraudulent. Of the $3.6 billion transaction, international banks financed 51% (approximately $1.854 billion), while Repsol contributed $1.619 billion (44%) through a vendor loan. The remainder was covered with advance dividends from YPF. As a result, Petersen contributed virtually no equity. Between 2008 and 2011, Repsol withdrew more than $5 billion in dividends, much of it from the very shares "acquired" by Petersen. The transaction was circular and abusive, using public funds as back-to-back guarantees, enriching Repsol and the Eskenazi/Kirchner network, while causing severe harm to U.S. investors through YPF's listing on the New York Stock Exchange.

- o In international acquisitions, buyers normally contribute 20–40% genuine equity and finance the rest with bank debt or bonds. In the Petersen–YPF case, equity was zero: 51% was covered by bank debt, 44% by a vendor loan from Repsol, and the remainder through advance dividends and Santa Cruz public funds. The deal was a circular and fraudulent structure, leaving the buyer with no risk and causing severe harm to YPF investors in New York.

3. **U.S. Financial Nexus – Citibank New York and Other Banks**

The fraudulent scheme had a direct and substantial nexus to the United States:

- o Multiple accounts belonging to the Eskenazi family and Petersen companies were maintained at Citibank N.A., New York, including accounts in the names of Sebastián, Enrique, Ezequiel, and Matías Eskenazi, and corporate entities such as Mantenimientos y Servicios S.A., Petersen Inversiones S.A., and Petersen Thiele y Cruz S.A. These were used for fund transfers and laundering operations.

- o In parallel, Citibank (New York), Credit Suisse AG (New York and Zurich branches), Bank of New York Mellon (Collateral Agent, 2008 and 2011),

BNP Paribas (New York), provided credit facilities enabling the Petersen Group to acquire YPF shares without genuine equity.

- o The loan agreements explicitly provided for the use of Citibank New York and Bank of New York Mellon accounts as collateral and clearing agents. The Registration Rights Agreement tied repayment and enforcement directly to the sale of YPF ADSs on the NYSE, creating a direct nexus with U.S. markets and investors.

4. **Fraudulent Credit Agreements (2008–2011)**

The Credit Agreements of February 2008 ($ 1.026B) and May 2011 ($ 1.7B) prove that the Petersen entities had virtually no equity at risk. The financing was structured entirely on the basis of YPF's future dividend flows, with collateral accounts in New York and Zurich, and pledges over Santa Cruz funds at Credit Suisse Zurich.

- o On December 30, 2009, Petersen Inversiones Spain S.A. acceded to the Intercreditor Agreement, expressly recognizing that the 2008 Credit Agreement was governed by the laws of the State of New York.
- o On February 22, 2010, Petersen Spain signed a $ 57.2 million Loan Agreement with G&FS Capital (Zurich), replacing the 2008 Chervil loan. This facility pledged Santa Cruz funds, routed payments via Credit Suisse Zurich, and defined Banking Days as including New York, further tying the scheme to U.S. jurisdiction.
- o On May 3, 2011, Petersen executed a $ 700 million Credit Agreement with Credit Suisse, BNP, Citibank, Standard Bank, Itaú, and BNY Mellon (New York) as Collateral Agent, creating multiple accounts in New York.
- o On May 19, 2011, Petersen entered a $ 625 million Seller Credit Agreement with Repsol, secured by a Pledge and Security Agreement and a Security Agreement with BNY Mellon (NY), governed by the New York Uniform Commercial Code.

5. **Impact on U.S. Investors**

YPF S.A. has been listed on the New York Stock Exchange (NYSE) since 1993. The fraudulent Petersen acquisition, structured through U.S. banks, directly harmed U.S. shareholders of YPF. Similarly, Burford Capital Ltd., which later acquired Petersen's claims and also trades on the NYSE, exploited this fraud to file a $ 16 billion lawsuit in the Southern District of New York, further impacting U.S. markets and investors.

6. **Assassination of Aldo Luis Ducler (2017)**

Aldo Ducler, former financial advisor to the Province of Santa Cruz and whistleblower on these operations, formally denounced the Santa Cruz–YPF fraud before Argentina's Financial Intelligence Unit (UIF) on May 30, 2017. Within 48 hours, on June 1, 2017, he collapsed in downtown Buenos Aires after being attacked, and died under suspicious circumstances. Evidence shows manipulation of ambulance records, the unauthorized entry of an unidentified agent into the ambulance, multiple falsified medical epicrises, and an autopsy consistent with chemical intoxication and mechanical asphyxia. The case was prematurely closed in Argentina without basic investigative measures.

7. **Retaliation Against Plaintiff (Juan Manuel Ducler)**

On June 2, 2017, Plaintiff presented himself to the UIF to continue his father's whistleblower claim, requesting anonymity and protection as provided by Argentine Law 27.319. Instead of protecting him, UIF head Mariano Federici publicly disclosed his identity three days later, leaving him exposed. Plaintiff has since endured judicial harassment, false prosecutions, defamation, threats, and long periods of separation from his daughter, all aimed at silencing his pursuit of justice.

8. **Burford Capital's Fraudulent Acquisition of Petersen Claims**

In 2014, Burford Capital Ltd. (London/New York) acquired Prospect Investments LLC (Delaware) to structure litigation assets. In 2015, Burford purchased Focus Intelligence Consulting Ltd. (UK), a private intelligence agency with ties to UK

Special Forces, to support its litigation strategies. That same year, Burford acquired Petersen Energía's claims against Argentina, despite knowing that Petersen's stake in YPF was fraudulently financed with misappropriated Santa Cruz funds.

9. **Fraudulent Lawsuit in New York**

Burford then filed suit in the Southern District of New York, seeking $ 16 billion against Argentina based on these tainted Petersen claims. This action constitutes fraud on the court and a violation of the "fruit of the poisonous tree" doctrine, since the underlying Petersen interest in YPF was obtained through corruption, money laundering, and fraudulent agreements governed by New York law.

10. **Benefit from the Assassination of Aldo Ducler**

Burford Capital directly benefitted from the assassination of Aldo Ducler in June 2017. With the original whistleblower silenced, Burford's fraudulent claim advanced unopposed in New York federal court. The timing strongly suggests that Burford, together with the Petersen Group and complicit Argentine officials, had motive and opportunity to remove the primary witness exposing the fraud.

11. **Admitted Corruption and Bribery**

In 2025, Argentina's Procuración del Tesoro admitted internal leaks and bribes in favor of Burford, dismissing 60 officials. During that period, **Andrés de la Cruz**, former Cleary Gottlieb partner who had structured the Petersen entities, served as Deputy Solicitor General of Argentina, representing the State against Burford despite clear conflicts of interest. This constitutes evidence of systemic corruption and collusion between Burford, Petersen, and Argentine state officials.

12. **Extortion Attempt Orchestrated by Judge Lijo and Grupo Petersen**
On Dec. 21, 2017, Plaintiff was summoned by Judge Ariel Lijo at the Federal Courthouse, in the presence of his attorney Kalbermatten, while under police custody ordered by Lijo. During the meeting, Judge Lijo openly admitted being a "friend of Sebastián Eskenazi" and pressured Plaintiff to accept a Petersen settlement.

One week later, Plaintiff was lured to Petersen's offices, where he was subjected to a staged extortion operation: hidden cameras, bribed police officers, and manipulated recordings designed to incriminate him and divert his energy into fabricated prosecutions.

Further proof arises from a hidden camera arranged by the Eskenazis, in which Kalbermatten is heard admitting that he and Plaintiff met Judge Lijo, who confirmed being "a friend of Sebastián Eskenazi." This directly corroborates Plaintiff's account of judicial corruption and Lijo's collusion with Grupo Petersen.

## V.    LEGAL CLAIMS

### Count I – Civil RICO (18 U.S.C. §§1962(c), (d))

Defendants, including Burford Capital, Grupo Petersen (Eskenazi family), associated banks (Credit Suisse, BNP Paribas, Citibank, and BNY Mellon), and complicit Argentine officials (including Judge Ariel Lijo), formed and conducted an international racketeering enterprise engaged in activities prohibited under U.S. law.

Pursuant to 18 U.S.C. §1964(c), this claim is brought in civil capacity, as Plaintiff has suffered direct, personal, and quantifiable injury to his person and property as a result of Defendants' racketeering acts.

**Predicate acts of RICO liability include:**

- o Fraud and conspiracy to commit fraud in the acquisition of a 25% stake in YPF S.A.;
- o Money laundering of Santa Cruz provincial funds through Credit Suisse (Zurich and New York) and Citibank New York;
- o Bribery of Argentine public officials to secure impunity and to advance Burford Capital's litigation strategy in the United States;
- o Obstruction of justice and fabrication of false criminal cases against Plaintiff, designed to neutralize him as a whistleblower;
- o Extortion and judicial corruption by Judge Ariel Lijo, who on December 21, 2017 admitted being a "friend of Sebastián Eskenazi" and pressured Plaintiff

to accept a fraudulent Petersen agreement; thereafter, Defendants staged an extortion operation using hidden cameras, bribed police officers, and manipulated recordings, all intended to discredit Plaintiff and tie him up in fabricated prosecutions;

o The assassination of Aldo Ducler in June 2017, carried out to silence the original whistleblower exposing the fraudulent scheme.

The racketeering enterprise operated across Argentina, the United States, Switzerland, Luxembourg, Spain, and the United Kingdom, with substantial acts and financial transfers routed through Citibank New York and BNY Mellon New York.

**Key racketeering instruments included:**

o The 2008 and 2011 Credit Agreement with Credit Suisse AG (New York), BNP Paribas (New York), BNY Mellon (New York), and Citibank N.A. (New York).

o The Pledge and Security Agreements with BNY Mellon, governed by New York UCC.

**Relief Requested:**

Plaintiff seeks civil remedies under RICO, including:

o Compensation for economic losses, reputational harm, loss of whistleblower protections, judicial persecution, and the assassination of Aldo Ducler;

o Treble damages, as expressly authorized by 18 U.S.C. §1964(c);

o Any additional relief this Court deems just and proper to redress the grave injuries caused by Defendants' racketeering enterprise.

**Count II – Fraud and Conspiracy to Commit Fraud**

Plaintiff brings this claim for civil fraud and conspiracy to commit fraud under U.S. common law, arising from the fraudulent acquisition of a 25% stake in YPF S.A., the misuse of Santa Cruz provincial funds, and the subsequent concealment and exploitation of this scheme through Burford Capital's litigation in New York.

**Elements of Civil Fraud**

Defendants made knowingly false statements and material omissions concerning the financing and ownership of Petersen Energía S.A. and Petersen Energía Inversora S.A.U.:

- o The Eskenazi family falsely presented themselves as independent private investors while in fact acting as frontmen ("testaferros") for Argentine political officials.
- o Defendants concealed that over 95% of the $3.6 billion Petersen acquisition was financed with debt, backed by YPF's own future dividends, through the 2008 and 2011 Credit Agreements, the 2011 Repsol Seller Loan, and collateralized accounts in New York.
- o Defendants failed to disclose the misuse of Santa Cruz provincial funds, laundered through Credit Suisse Zurich and routed via Citibank New York.
- o Burford Capital, with full knowledge of the fraudulent origin of Petersen's stake, acquired Petersen's claims in 2015 and initiated litigation in the SDNY seeking $16 billion.

**Reliance and Injury**

U.S. markets and investors — including shareholders of YPF S.A. (NYSE: YPF) and Burford Capital Ltd. (NYSE: BUR) — reasonably relied on these representations and omissions. Plaintiff also relied on the integrity of whistleblower protections, but instead was subjected to retaliation.

In particular, President Mauricio Macri and his advisor Fabián "Pepín" Rodríguez Simón, in coordination with the Argentine Financial Intelligence Unit (UIF), blocked the original whistleblower filing of Aldo Ducler in May 2017. Following his death, on June 2, 2017, UIF Chairman Mariano Federici publicly disclosed the whistleblower filing of Juan Manuel Ducler, even though Plaintiff had expressly requested confidentiality, protection, and 10% of Burford's $16 billion claim under Argentine Law 27.319. By deliberately exposing his identity, Defendants deprived Plaintiff of legal protections, placed him at personal risk, and facilitated a campaign of judicial harassment against him.

Furthermore, Judge Rappa and Prosecutor Peres, who were in charge of the criminal case regarding the death of Aldo Ducler (Case No. 33.168/2017), never investigated the

assassination, despite overwhelming irregularities in medical and forensic records. Instead, they closed the case as "natural death" under external orders, while omitting dozens of evidentiary measures expressly requested by Juan Manuel Ducler as private accuser. This deliberate omission constitutes an additional act of obstruction of justice, integral to the conspiracy to silence the whistleblower family and guarantee impunity for the fraud.

**Damages**

As a result of Defendants' fraud and conspiracy:

- Plaintiff suffered direct economic damages, including denial of whistleblower compensation tied to Burford's fraudulent $16 billion claim;
- Plaintiff endured severe reputational harm and fabricated criminal prosecutions aimed at silencing him;
- U.S. investors were defrauded, and the integrity of SDNY proceedings was compromised.

**Conspiracy**

Defendants acted in concert, with overt acts including:

- o Execution of fraudulent financing agreements in 2008 and 2011;
- o Use of Citibank New York and BNY Mellon accounts to channel illicit funds and secure collateral;
- o Burford Capital's acquisition of Petersen's claims despite actual knowledge of fraud, corruption, and money laundering;
- o Coordination with complicit Argentine officials, including Judge Ariel Lijo, who facilitated fabricated prosecutions against Plaintiff;
- o The actions of President Macri, Rodríguez Simón, and the UIF, blocking Aldo Ducler's original filing and then deliberately exposing Plaintiff as a whistleblower, in violation of confidentiality and protection standards;
- o The deliberate inaction of Judge Rappa and Prosecutor Peres, who closed the case of Aldo Ducler's assassination as "natural death," ignoring key evidence and carrying out external political and financial orders.

**Relief Requested**

Plaintiff seeks judgment holding all Defendants jointly and severally liable for civil fraud and conspiracy to commit fraud, with damages to be determined at trial, including punitive damages where appropriate.

**Count III – Foreign Corrupt Practices Act (15 U.S.C. §78dd et seq.)**

Plaintiff brings this civil claim under the Foreign Sovereign Immunities Act (FSIA), seeking relief against the Republic of Argentina. While sovereigns generally enjoy immunity, FSIA provides exceptions for commercial activities with a direct effect in the United States and for tortious acts resulting in personal injury, including extrajudicial killing, committed outside the U.S. where wrongful conduct is attributable to the foreign state.

**Commercial Activity Exception (28 U.S.C. §1605(a)(2))**

The Republic of Argentina engaged in commercial activity with a substantial nexus to the United States by:

- o Channeling misappropriated Santa Cruz provincial funds through Credit Suisse Zurich and Citibank New York to finance the fraudulent Petersen acquisition of 25% of YPF;
- o Participating in and approving multi-billion-dollar Credit Agreements (2008 and 2011) syndicated by Credit Suisse AG (New York), BNP Paribas (New York), BNY Mellon (New York), and Citibank N.A. (New York), governed by New York law and secured through collateral accounts in New York;
- o Facilitating the Repsol Seller Loan (2011) and Pledge & Security Agreements with BNY Mellon under New York UCC;
- o Enabling Burford Capital's fraudulent claim in SDNY by failing to oppose it and by providing internal leaks and bribes within the Procuración del Tesoro to benefit Burford, as admitted in 2025.

These activities were commercial in nature, not sovereign, and had a direct and foreseeable effect in the United States by harming investors in YPF (NYSE) and Burford Capital (NYSE), and by corrupting federal litigation in SDNY.

**Tort Exception (28 U.S.C. §1605(a)(5))**

Argentina is also liable under the tort exception, as state officials and agents engaged in extrajudicial killing and retaliation:

- o The assassination of Aldo Ducler on June 1, 2017, carried out through collusion of Argentine intelligence services, private ambulance company International Health Services (Emergencias Médicas), and police forces controlled by government officials, to silence a whistleblower exposing the YPF-Santa Cruz fraud;
- o The retaliation against Plaintiff, including fabricated criminal prosecutions, public exposure of his whistleblower identity by UIF Chairman Mariano Federici, and intimidation by high-ranking officials including President Mauricio Macri and advisor Fabián Rodríguez Simón;
- o The deliberate obstruction of justice by Judge Rappa and Prosecutor Peres, who closed the homicide case as "natural death" under political instructions, ignoring evidence requested by Plaintiff.

These acts constitute violations of international human rights law (extrajudicial killing, denial of justice, persecution of whistleblowers), and therefore fall squarely within FSIA's tort exception.

**Relief Requested**

Accordingly, Argentina's sovereign immunity is removed, and Plaintiff seeks civil remedies against the Republic of Argentina for:

- o Its role in fraudulent commercial financing through New York banks;
- o Its responsibility for the assassination of Aldo Ducler and the persecution of Plaintiff as a whistleblower;
- o Economic damages, reputational harm, wrongful death damages, and other relief as determined at trial.

**Count IV – Foreign Sovereign Immunities Act (28 U.S.C. §§1605(a)(2), (a)(5))**

Plaintiff brings this civil claim against the Republic of Argentina under the Foreign Sovereign Immunities Act (FSIA). While sovereigns generally enjoy immunity, FSIA provides exceptions for (i) commercial activities with a direct effect in the United States and (ii) tortious acts resulting in personal injury, including extrajudicial killing, where the wrongful conduct is attributable to the foreign state.

**Commercial Activity Exception (28 U.S.C. §1605(a)(2))**

The Republic of Argentina, through former President Néstor Kirchner and other senior officials, facilitated and protected its frontmen — the Eskenazi family, acting through the Petersen Group — to fraudulently acquire a 25% stake in YPF S.A. using international financial structures centered in New York.

In particular, Argentina enabled and approved that its frontmen:

- o Enter into the 2008 Credit Agreement ($ 1.026B) and the 2011 Credit Agreement ($ 700) syndicated by Credit Suisse AG (New York), BNP Paribas (New York), BNY Mellon (New York), and Citibank N.A. (New York), governed by New York law and secured through collateral accounts in New York;
- o Access the 2011 Repsol Seller Loan ($ 625M) and the Pledge & Security Agreements with BNY Mellon, governed by the New York UCC;
- o Structure a scheme whereby over 95% of the $ 3.6 billion transaction was covered by debt backed by YPF's own future dividends, thereby directly exposing NYSE investors.

Subsequently, in 2012, the Argentine government expropriated 51% of YPF, taking state control of the company, and thereby continued manipulating YPF's share value and defrauding U.S. investors who relied on the integrity of a company listed on the New York Stock Exchange.

These actions, though disguised as political decisions, constituted international commercial activity because they involved credit agreements, collateral arrangements

governed by New York law, and trading of securities on U.S. markets. Accordingly, Argentina falls within FSIA's commercial activity exception.

**Tort Exception (28 U.S.C. §1605(a)(5))**

The Republic of Argentina is also liable under FSIA's tort exception, as its officials and agents engaged in extrajudicial killing and retaliation:

- o   The assassination of Aldo Ducler on June 1, 2017, carried out through collusion between Argentine intelligence services, private ambulance company International Health Services (Emergencias Médicas), and police forces controlled by government officials, to silence a whistleblower exposing the YPF–Santa Cruz fraud;
- o   The retaliation against Plaintiff, including fabricated criminal prosecutions, the public disclosure of his whistleblower identity by UIF Chairman Mariano Federici, and intimidation by senior officials including President Mauricio Macri and advisor Fabián Rodríguez Simón;
- o   The deliberate obstruction of justice by Judge Rappa and Prosecutor Peres, who closed the homicide case as "natural death" under political orders, ignoring dozens of evidentiary requests by Plaintiff.

These acts constitute violations of international human rights law — including extrajudicial killing, denial of justice, and persecution of whistleblowers — and fall squarely within FSIA's tort exception.

**Relief Requested**

Accordingly, Argentina's sovereign immunity is removed, and Plaintiff seeks civil remedies against the Republic of Argentina for:

- o   Facilitating and protecting the fraudulent Petersen acquisition of 25% of YPF through New York–based financing;
- o   Its role in the 2012 expropriation of 51% of YPF, continuing manipulation of YPF shares and fraud against U.S. investors;
- o   Its responsibility for the assassination of Aldo Ducler and the persecution of Plaintiff as a whistleblower;

- o  Economic damages, reputational harm, wrongful death damages, and any other relief deemed appropriate at trial.

## Count V – Whistleblower Retaliation (Dodd-Frank Act, 15 U.S.C. §78u-6(h))

Plaintiff brings this civil claim under the Dodd-Frank Act's whistleblower protection provisions (15 U.S.C. §78u-6(h)), which prohibit retaliation against individuals who provide information regarding securities fraud and violations of U.S. law involving companies listed on the New York Stock Exchange.

### Protected Disclosures

- o  On May 30, 2017, Aldo Ducler filed a complaint with Argentina's Financial Intelligence Unit (UIF), exposing the fraudulent acquisition of YPF by Grupo Petersen, the misuse of Santa Cruz provincial funds, and related money laundering through New York banks.
- o  On June 2, 2017, Juan Manuel Ducler (Plaintiff) continued his father's whistleblower complaint, formally appearing before the UIF and requesting confidentiality, protection, and whistleblower compensation equivalent to 10% of Burford Capital's $16 billion claim, consistent with Argentine Law 27.319 and the principles of U.S. securities whistleblower protections.
- o  The disclosures of Aldo and Juan Manuel Ducler concerned fraud and corruption involving YPF S.A. (NYSE: YPF) and Burford Capital Ltd. (NYSE: BUR), both issuers whose securities trade on U.S. markets.

### Retaliatory Acts

Instead of protection, Plaintiff and his father were subjected to a coordinated campaign of retaliation:

- o  On June 1, 2017, Aldo Ducler was assassinated under suspicious circumstances, within 48 hours of filing his whistleblower complaint;
- o  On June 5, 2017, UIF Chairman Mariano Federici publicly disclosed Plaintiff's identity as a whistleblower, in direct violation of legally guaranteed confidentiality;

- o Plaintiff was subsequently subjected to fabricated criminal prosecutions, public defamation campaigns, and prolonged separation from his daughter, all designed to silence him;
- o Senior Argentine officials, including President Mauricio Macri and his advisor Fabián Rodríguez Simón, blocked Aldo Ducler's original filing and facilitated Plaintiff's exposure and persecution;
- o Judges and prosecutors, including Judge Ariel Lijo, Judge Rappa, and Prosecutor Peres, engaged in obstruction of justice and judicial harassment as acts of retaliation.

**Injury**

As a consequence of these retaliatory acts:

- o Plaintiff was deprived of whistleblower compensation tied to Burford's fraudulent $16 billion claim;
- o Plaintiff suffered economic losses, reputational damage, fabricated prosecutions, and threats to personal safety;
- o The assassination of Aldo Ducler caused additional personal and professional harm to Plaintiff as surviving son and whistleblower.

**Relief Requested**

Plaintiff seeks civil remedies under the Dodd-Frank Act, including:

- o Compensation for economic losses and reputational harm;
- o Damages for emotional distress and for the wrongful death of Aldo Ducler;
- o Double back pay and other relief authorized under §78u-6(h)(1)(C);
- o Any other relief the Court deems just and proper.

**Count VI – Wrongful Death and Human Rights Violations**

Plaintiff brings this civil claim for wrongful death and human rights violations arising from the assassination of his father, Aldo Luis Ducler, on June 1, 2017, and the continuing persecution of Plaintiff as his surviving son and whistleblower.

**Wrongful Death**

- o On May 30, 2017, Aldo Ducler filed a whistleblower complaint before Argentina's Financial Intelligence Unit (UIF), exposing the fraudulent Petersen acquisition of YPF, the misuse of Santa Cruz funds, and related money laundering.
- o Within 48 hours, on June 1, 2017, he collapsed in downtown Buenos Aires after being attacked, and died under suspicious circumstances.
- o Evidence demonstrates deliberate wrongdoing:
  - o Ambulance records were manipulated, with Emergencias Médicas (International Health Services S.A.) units 106 and 116 delaying hospital transfer by 44 minutes despite being 6 minutes away.
  - o An unidentified intelligence operative ("NN agent") entered the ambulance without authorization.
  - o Multiple falsified medical epicrises and altered forensic reports concealed the true cause of death.
  - o Autopsy findings are consistent with chemical intoxication and mechanical asphyxia, not natural death.
- o The criminal case (No. 33.168/2017) was prematurely closed by Judge Rappa and Prosecutor Peres as "natural death," ignoring critical evidence requested by Plaintiff.

**Human Rights Violations**

The assassination of Aldo Ducler constitutes an extrajudicial killing and a violation of fundamental human rights protected under international law, including:

- o The right to life (Article 6, ICCPR; Article 4, ACHR);
- o The right to due process and access to justice (Article 8, ACHR; Article 14, ICCPR);
- o The right to truth and protection of whistleblowers, as recognized under U.N. and Inter-American human rights standards.

Plaintiff, as surviving son, also suffered direct violations of his rights, including:

- o Denial of justice and cover-up of his father's assassination;

- o  Judicial harassment and fabricated prosecutions to silence him;
- o  Long-term forced separation from his daughter, constituting cruel and inhumane treatment;
- o  Exposure to threats and intimidation after being deliberately identified as a whistleblower by UIF Chairman Mariano Federici.

**Defendants' Liability**

Defendants — including the Republic of Argentina, Grupo Petersen (Eskenazi family), Burford Capital, complicit banks, and Argentine officials (Macri, Rodríguez Simón, Lijo, Rappa, Peres, Federici) — acted jointly or in concert to:

- o  Silence Aldo Ducler through assassination;
- o  Obstruct investigation and close the case as natural death;
- o  Retaliate against Plaintiff to prevent exposure of the YPF–Santa Cruz fraud;
- o  Benefit financially and politically from the elimination of the whistleblower.

**Relief Requested**

Plaintiff seeks civil remedies for wrongful death and human rights violations, including:

- o  Compensatory damages for economic loss, reputational harm, and emotional distress;
- o  Wrongful death damages for the assassination of Aldo Ducler;
- o  Punitive damages against all Defendants;
- o  Declaratory relief recognizing the assassination as an extrajudicial killing and the judicial cover-up as a violation of international human rights law.

**Count VII – Fraud on the Court / Declaratory Judgment of Nullity**

Plaintiff seeks a declaratory judgment that the $ 16 billion lawsuit filed by Burford Capital in *Petersen Energía Inversora S.A.U. v. Argentine Republic* (SDNY, 15-cv-02739) is null and void under the doctrine of "fruit of the poisonous tree" and due to fraud on the court.

**Fraudulent Origin of Petersen's Stake in YPF**

Between 2008 and 2011, the Eskenazi family, acting as frontmen for former President Néstor Kirchner and his family, fraudulently acquired a 25% interest in YPF S.A. The acquisition was financed almost entirely with misappropriated Santa Cruz provincial funds and debt facilities syndicated by Credit Suisse, Goldman Sachs, BNP Paribas, Citibank, Itaú, and BNY Mellon, governed by New York law. Less than $ 25 million of Petersen's own equity was invested in a $ 3.6 billion transaction.

These transactions constituted fraud, money laundering, and misuse of public funds, with a direct nexus to U.S. financial institutions and U.S. securities markets.

**Burford Capital's Fraudulent Claim**

In 2015, Burford Capital purported to acquire Petersen's claims despite actual or constructive knowledge that Petersen's stake in YPF was fraudulent ab initio and never represented a bona fide investment.

Burford then filed suit in the Southern District of New York, seeking $ 16 billion based on interests that never legally existed.

**Fraud on the Court**

Burford's litigation in SDNY constitutes fraud on the court, as it is predicated on fraudulent transactions involving U.S. banks and laundered public funds. By concealing the fraudulent origin of Petersen's stake, Defendants deprived the Court of the ability to adjudicate the matter fairly and honestly.

**Declaratory Relief Requested**

Plaintiff respectfully requests that this Court declare that:

o   Burford Capital's $ 16 billion claim in SDNY is null and void, as it arises from fraud, corruption, and money laundering;
o   Petersen's acquisition of YPF shares was fraudulent ab initio, financed through misappropriated Santa Cruz funds and unlawful credit agreements;

- o Any judgment or settlement arising from Burford's SDNY litigation is unenforceable under U.S. law.

## VI.    DAMAGES

**Plaintiff respectfully requests that the Court award the following damages:**

1. **Informant Reward**
   - o Pursuant to Argentine Law 27.319, Plaintiff was entitled to 10% of the economic benefit derived from the whistleblower filing concerning the fraudulent acquisition of YPF shares by Grupo Petersen and the subsequent Burford litigation.
   - o This amounts to approximately **$1.6 billion**.

2. **Civil RICO – Treble Damages**
   - o Under 18 U.S.C. §1964(c), damages proven in a civil RICO action are subject to trebling.
   - o Accordingly, the above amount should be multiplied by three, resulting in approximately **$4.8 billion**.

3. **Compensatory Damages**
   - o For the assassination of Aldo Ducler, violation of Plaintiff's human rights, persecution, fabricated prosecutions, deprivation of family contact (268 days), emotional distress, reputational harm, and economic losses suffered.
   - o Amount to be determined at trial, but estimated in the hundreds of millions of dollars.

4. **Punitive Damages**
   - o Against Burford Capital, Grupo Petersen, and associated defendants for willful, malicious, and fraudulent conduct; for corrupting the judicial process; and for benefitting from the assassination of a whistleblower.
   - o Amount to be determined at trial.

5. **Equitable Relief**
   - o Declaratory judgment nullifying Burford's $16B claim against Argentina under the "fruit of the poisonous tree" doctrine.

    o   Injunctive relief to protect Plaintiff as a whistleblower and prevent further retaliation.

**Total Demand**

The total claim exceeds **$1.6 billion**, subject to treble damages under Civil RICO (≈ $4.8 billion), plus compensatory and punitive damages to be determined at trial.

## VII.   RELATED CASE REQUEST

Plaintiff requests this case be designated as related to Petersen Energía Inversora S.A.U. and Petersen Energía S.A.U. v. Republic of Argentina in SDNY, as both share common facts, evidence, and fraud. Discovery in this matter will directly affect validity of Burford's $16B claim.

## VIII.  PRAYER FOR RELIEF

1. Declare Burford's $16B lawsuit null and void.
2. Award Plaintiff $1.6B as informant share.
3. Award $4.8B under Civil RICO treble damages.
4. Award compensatory and punitive damages in an amount to be determined at trial.
5. Order discovery under 28 U.S.C. §1782 from Burford, Petersen, banks, Argentina, Emergent Médicas.
6. Provide injunctive relief protecting Plaintiff as a whistleblower.
7. Designate this case as related to Burford Capital v. Argentina.
8. Grant any other relief the Court deems just and proper.

## IX.   EXHIBITS

1. **Exhibit A** – Credit Agreement (February 21, 2008).
2. **Exhibit B** – Registration Rights Agreement (2008).
3. **Exhibit C –** Credit Agreement (May 3, 2011)
4. **Exhibit D** – Forensic Evidence Regarding the Assassination of Aldo Luis Ducler (2017).
5. **Exhibit E** – UIF Whistleblower Presentation by Plaintiff (June 2, 2017).

6.  **Exhibit F** – Burford Capital Litigation Filing (SDNY, Case No. 15-cv-02739).

7.  **Exhibit G –** 2012 Expropriation of YPF

8.  **Exhibit H –** 2025 Procuración del Tesoro Corruption Purge

9.  **Exhibit I –** Judge Lijo Extortion Operation (2017)

10. **Exhibit J –** UIF Public Disclosure of Whistleblower Filing (2017)

**Reservation of Rights:**

Plaintiff respectfully reserves the right to supplement this Complaint with additional exhibits, documents, expert reports, and testimonial evidence as may be obtained during discovery or as otherwise permitted by this Court.

**Dated:** August 24, 2025

Respectfully submitted,

**Juan Manuel Ducler (Pro Se)**

Mendoza, Argentina

Tel/WhatsApp: +54 9 2622 43 1978

Website: The Ducler Case