UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN MANUEL DUCLER,

Plaintiff,

-against-

REPUBLIC OF ARGENTINA; JOHN DOES 1-10,

Defendants.

25-CV-7018 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is proceeding *pro se*, brings this action asserting claims under the Torture Victims Protection Act and the civil RICO statute, and claims of intentional infliction of emotional distress under state law. By separate order, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the following reasons, the Court dismisses the second amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special

solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief and to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff Juan Manuel Ducler, a citizen of Argentina, filed a second amended complaint on October 30, 2025,[1] against the Republic of Argentina and John Does 1-10, who are "natural persons believed to include intelligence/security officials and private collaborators acting under color of Argentine law or in concert with such officials." (ECF 13 at 3.) The following facts are drawn from the second amended complaint, which is the operative pleading.[2]

---

[1] Plaintiff filed first and second amended complaints of his own accord, not in response to a court order. The Court grants the motion for leave to file the second amended complaint. (ECF 14.)

[2] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise. The Court also relies on information gleaned from court records. *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (explaining that the court may take judicial notice of public records).

Plaintiff alleges that in 2012, litigation commenced in this district in connection with the "re-nationalization" of YPF SA ("YPF"), an Argentine energy company. (*Id.* at 4-5). Plaintiff was not a party in those matters.[3] On June 1, 2017, Defendants allegedly killed Plaintiff's father, Aldo Luis Ducler, in a "state-linked conspiracy," for reporting on "high-level corruption" involving YPF. (*Id.* at 1.) The following day, Plaintiff submitted a "whistleblower filing," and offered to assist the government with recovering assets and "avert[ing] or mitigat[ing] U.S. litigation risk tied to YPF, consistent with lawful percentage-based informant compensation." (*Id.* at 2.) Plaintiff claims that he warned the government "of catastrophic U.S. exposure related to" YPF, but "no action" was taken, and instead Plaintiff was subjected to unspecified "intimidation, defamation, and interference with family life." (*Id.* at 4.)

According to Plaintiff, the government's failure to "investigate," "negotiate," or otherwise act on his information "contribut[ed] to multi-billion-dollar consequences in this District" and "destroy[ed]" his "New-York-centered business expectancy (a lawful percentage-based compensation for mitigation assistance) valued at not less than USD 1.6 billion."[4] (*Id.* at 2.) Plaintiff claims that it was "foreseeable" that the government's "inaction" on his information would produce direct and catastrophic effects in the United States. (*Id.* at 4.)

[3] *See Repsol YPF SA v. Rep. of Argentina*, No. 12-CV-3877 (LAP) (S.D.N.Y. May 9, 2014) (entering stipulated dismissal); *Petersen Energia Inversora, S.A.U. et al v. Argentine Rep.*, No. 15-CV-2739 (LAP) (S.D.N.Y. Sept. 15, 2023), *remanded*, No. 23-7370 (L), 23-7463, 23-7614 (2d Cir. June 10, 2026) ("*Peterson*"); *Eton Park Cap. Mgm't, L.P. v. Argentine Rep.*, No. 16-CV-8569 (LAP) (S.D.N.Y. Sept. 15, 2023); *vacated and remanded*, Nos. 23-7376(L), 23-7471, 23-7667 (2d Cir. Mar. 27, 2026) ("*Eton Park*"). On September 1, 2025, Plaintiff moved *pro se* to intervene in *Peterson*. *See* No. 15-CV-2739, ECF 790. The docket is not showing an adjudication of that motion.

[4] On September 15, 2023, a $16.1 billion judgment was entered in *Eton Park*, *id.*, ECF 418; on March 27, 2026, the Second Circuit vacated that judgment. *Id.*, Nos. 23-7376(L), 23-7471, 23-7667 (2d Cir. Mar. 27, 2026).

Plaintiff alleges that this Court has subject matter jurisdiction of his claims against the Republic of Argentina under the commercial activity exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605. (*Id.* at 2.) He asserts claims under the Torture Victims Protection Act and the civil RICO statute, alleging that Defendants engaged in "violent retaliation" and violated the following criminal statutes: "18 U.S.C. § 1343 (wire fraud), § 1503 (influencing or injuring officer or juror), § 1512 (tampering with a witness, victim, or informant), § 1513(e) (retaliating against a witness, victim, or informant) § 1956 (money laundering). (*Id.* at 6.) He further alleges that Defendants violated 18 U.S.C. § 1962(d) by "agreeing to participate in the racketeering scheme." (*Id.*). He claims that injury to his "business/property" occurred in the United States, "where the mitigation opportunity and transactions were centered in New York and in U.S. dollars; counsel, banks, and communications infrastructure were U.S.-based; and YPF-related market/settlement effects were anchored in this District". (*Id.*) He also asserts a state law claim of intentional infliction of emotional distress. (*Id.*)

There are pending motions for judicial notice, and "direction regarding service of process." (ECF 10, 18, 22.)

## DISCUSSION

### A. Claims against the Argentine Republic

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605, "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Foreign sovereigns are presumptively immune from suit. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); 28 U.S.C. § 1603(a), (b). Unless a specified exception applies, federal courts lack subject matter jurisdiction to hear claims against them. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488-89 (1983).

Plaintiff asserts that the commercial activity exception applies here. *See* 28 U.S.C. § 1605(a)(2). That exception provides that a foreign state shall not be immune from the jurisdiction of United States courts in any case in which the action is "based upon," or causes "a direct effect on" commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2); *Yerkyn v. Yakovlevich*, 164 F.4th 224, 228 (2d Cir. 2026) (quoting *Verlinden*, 461 U.S. at 488-89)) (explaining that the commercial activity exception includes "actions based upon commercial activities of the foreign sovereign carried on in the United States or causing a direct effect in the United States").

An act has a direct effect in the United States when it follows as an "immediate consequence" of the defendant's activity. *Rep. of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) (changed maturity dates on bonds had a direct effect in the United States because "[m]oney that was supposed to have been delivered to a New York bank for deposit was not forthcoming."). For the exception to apply, there must be "'a degree of closeness' between the gravamen of the complaint and the commercial activity engaged in by the foreign state or instrumentality." *EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 97 (2d Cir. 2015). The requisite nexus does not exist where the commercial activity in the United States is "incidental" to the foreign state's improper conduct outside the United States that forms the basis of the plaintiff's claim. *Id.*

The gravamen of Plaintiff's complaint is that state actors killed his father and retaliated against Plaintiff for engaging in whistleblower activities regarding YPF. Plaintiff's expectation of receiving compensation for providing information relating to YPF litigation in this district appears wholly incidental to his allegations regarding Defendants' activities in Argentina that

form the basis of his claims. The fact that both relate to YPF is incidental. Accordingly, the Court lacks jurisdiction of any claims Plaintiff seeks to assert against the Republic of Argentina.

**B. TVPA**

The Torture Victim Protection Act ("TVPA") created "an express cause of action for victims of torture and extrajudicial killing in violation of international law," *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 265-66 (2018), and imposes liability on an "individual who, under actual or apparent authority, or color of law, of any foreign nation" subjects another individual to torture or extrajudicial killing. TVPA § (2)(a); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177-78 (2d Cir. 2014). Civil lawsuits under the TVPA can only proceed against individuals, and not against foreign governments, organizations, or corporations. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 451 (2012); *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 617 (S.D.N.Y. 2012) (same).[5]

The TVPA's definition of torture is "rigorous," *Mohammad v. Tarraf*, No. 02-CV-282A (RJA), 2007 WL 1040031, at *3 (W.D.N.Y. Apr. 4, 2007) (quoting *Price. v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93 (D.C. Cir. 2002)), and applies only to acts "directed against an individual in the offender's custody or physical" control." TVPA § 3(b)(1); *see also Chowdhury v. Worldtel Bangladesh Holding, Ltd.*, 746 F.3d 42, 51-52 (2d Cir. 2014). The "severity requirement" is "crucial to ensuring that the conduct proscribed by . . . the TVPA is sufficiently extreme and outrageous to warrant the universal condemnation that the term 'torture' both connotes and invokes." *Price*, 294 F.3d at 93.

[5] A district court must "decline to hear a claim under [the TVPA] if the claimant has not exhausted adequate and available remedies in the place" where the alleged conduct occurred. *Id.* § 2(b).

Plaintiff asserts that state actors killed his father because he reported corruption, but he does not provide any facts about who those individuals are, how they are connected to the state, the manner in which each individual was involved in what occurred, or any other facts supporting his assertion that the killing was a "state-linked conspiracy." (ECF 13 at 1.)[6]

With respect to Plaintiff's claims about Defendants' alleged conduct toward him—that they subjected him to "intimidation, defamation, and interference with family life"—at no point does Plaintiff allege that he was in Defendants' custody or physical control, which is "a necessary element of any torture claim under the TVPA." *Mohammad*, 2007 WL 1040031, at *4. Additionally, Plaintiff does not allege facts meeting the statute's "severity requirement" as discussed in this order. *Price*, 294 F.3d at 93.

The Court therefore dismisses Plaintiff's TVPA claims for failure to state a claim on which relief may be granted, 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. RICO**

Plaintiff asserts claims under the civil provision of RICO, which "creates a private right of action for individuals to enforce the RICO statute." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004). The civil RICO enforcement provision states that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . may sue . . . in any

---

[6] Plaintiff must also show that he has standing to assert a TVPA claim on his father's behalf. *Xuncax v. Gramajo*, 886 F. Supp. 162, 191 (D. Mass. 1995) (holding that a victim's "legal representative" may be a claimant in a TVPA matter based on an extrajudicial killing). Where "the administrator and sole beneficiary of an estate with no creditors seeks to appear *pro se* on behalf of the estate, []he is in fact appearing solely on [his] own behalf, because []he is the only party affected by the disposition of the suit." *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 893 (2d Cir. 2019) (citing *Guest v. Hansen*, 603 F.3d 15, 21 (2d Cir. 2010)). But "[w]here there are other beneficiaries, 'an action cannot be described as the litigant's own, because the personal interests of the estate, other survivors, and possible creditors . . . will be affected by the outcome of the proceedings.'" *Guest*, 603 F.3d at 20 (quoting *Iannaccone*, 142 F.3d at 559).

appropriate United States district court and shall recover threefold the damages[.]" 18 U.S.C. § 1964(c). In order to state a violation of Section 1962, and thus, a claim under the civil RICO enforcement provision, a plaintiff must allege facts showing: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting § 1962(a)-(c)). Such a person must also "allege that he was 'injured in his business or property *by reason of* a violation of section 1962.'" *Id.* (quoting § 1964(c) (italics in original)).

To state a claim of a civil RICO conspiracy under Section 1962(d), a plaintiff must allege facts showing that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). A plaintiff must also show that "if the agreed upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Id.* at 244-45. Racketeering activity is defined to include a wide variety of criminal offenses, such as wire fraud, mail fraud, and money laundering. § 1961(1).

The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to RICO claims predicated on fraud. *See McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992); *Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*, No. 21-CV-4124 (KPF), 2022 WL 3227875, at *9 (S.D.N.Y. Aug. 9, 2022) (holding that "even when a plaintiff proceeds *pro se*, courts apply the Rule 9(b) pleading standard and dismiss complaints that do not meet its heightened requirements") A plaintiff must "specify the time, place, speaker, and content of the

alleged misrepresentations, explain how the misrepresentations were fraudulent[,] and plead those events which give rise to a strong inference that [each] defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Rev. v. Minci,* No. 21-CV-320 (AT) (JLC), 2022 WL 1910127, at *3 (S.D.N.Y. June 3, 2020) (quoting *Jus Punjabi, LLC v. Get Punjabi US, Inc.*, 640 F. App'x 56, 58 (2d Cir. 2016)) (cleaned up). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Finally, conclusory allegations of injury to business or property "will not suffice; rather, a plaintiff must allege a 'concrete financial loss.'" *Jingle Kids USA, LLC v. In Colour Cap., Inc.*, No. 22-CV-7089 (JHR) (SLC), 2023 WL 5016496, at *9 (S.D.N.Y. June 6, 2023), *report and recommendation adopted*, 2023 WL 6389080 (S.D.N.Y. Oct. 2, 2023) (citing *Beter v. Murdoch*, No. 17-CV-10247 (GBD), 2018 WL 3323162, at *5 (S.D.N.Y. June 22, 2018), *aff'd*, 771 F. App'x 62 (2d Cir. 2019) (summary order)); *see also Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 613 (S.D.N.Y. 2015) ("Courts have required that the plaintiff show concrete financial loss in order to show injury under RICO.") (quoting *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014)) (cleaned up)).

Plaintiff does not allege facts that would support a civil RICO claim. He lists criminal statutes that qualify as predicate acts, but he provides no facts showing that any Defendant engaged in the underlying conduct or otherwise violated the RICO statute. Additionally, his assertions that Defendants deprived him of the "opportunity" to seek mitigation compensation that he expected would be in the range of $1.6 billion is wholly speculative, and does not suggest

the type of "concrete financial loss" necessary to show an injury to business or property. *See Kerik*, 64 F. Supp. 3d at 560.

Plaintiff's allegations do not state a violation of the RICO statute, and the Court dismisses any claims under the civil RICO statute for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D. State-law claim (intentional infliction of emotional distress)**

**1. Supplemental jurisdiction**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**2. Diversity jurisdiction**

A federal court also can consider state-law claims under its diversity jurisdiction. To establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). Generally, "[a]n individual's citizenship, within the meaning of the

diversity statue, is determined by his domicile." *Johnson v. Smithsonian*, 4 Fed. App'x 69, 70 (2d Cir. 2001) (citing *Palazzo v. Corio*, 232 F.3d 88, 42 (2d Cir. 2000)).

Federal diversity jurisdiction is destroyed if there are foreign entities on both sides of a lawsuit. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980) (noting that "the fact that alien parties were present on both sides would destroy complete diversity[.]" ); *Moreno-Godoy v. Gallet Dreyer & Berkey, LLP*, No. 14-CV-7082 (PAE), 2015 WL 5737565, at *7 (S.D.N.Y. Sept. 30, 2015) (holding that when a party is an alien for diversity purposes, "diversity i[s] . . . defeated if another alien party is present on the other side of the litigation."). Because Plaintiff asserts that both he and Defendants are aliens, the Court cannot exercise diversity jurisdiction of this action.

**E. Leave to replead**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

Plaintiff's second amended complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed for failure to state a claim on which relief may be granted, on immunity grounds, and without prejudice for lack of subject matter jurisdiction, 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii), Fed. R. Civ. P. 12(h)(3).

The Court declines to exercise its supplemental jurisdiction of any state-law claims Plaintiff may be asserting, 28 U.S.C. § 1367.

The Court directs the Clerk of Court to terminate all pending motions. (ECF 10, 14, 18, 22.)

The Court further directs the Clerk of Court to enter judgment.

SO ORDERED.

Dated: July 24, 2026
New York, New York

Louis L. Stanton

Louis L. Stanton
U.S.D.J.